## THE NEW HOME LIFE ASSOCIATION OF ILLINOIS
### v.
## LETHA OWEN AND RUFUS D. OWEN, FOR USE, ETC.

*Life Insurance—Mutual Benefit Associations—Application—Truth as to Statements in—Verdict—Form of—Evidence—Instructions.*

While an affidavit as to the state of his health, filed by an ex-soldier upon application for a pension, is admissible in an action upon a life insurance policy issued to him, as tending to show that at about the time he took out the same he was suffering from a disease which he fraudulently failed to disclose to the company, and which, if he had, would have prevented his being accepted as a risk, it is not conclusive, and the jury must determine from all the evidence, whether the facts set forth in such affidavit were true or that the application for insurance correctly stated his condition.

[Opinion filed February 2, 1891.]

IN ERROR to the Circuit Court of Jackson County; the Hon. O. A. HARKER, Judge, presiding.

Appellant issued a certificate of membership, in the nature of a policy of insurance, to Allen J. Hagler, May 10, 1884, Letha Owen and Rufus D. Owen being named as beneficiaries in such certificate.    Hagler died August 10, 1888, and the association refusing to pay, suit was brought by the beneficiaries to recover upon the certificate.    After suit was brought the association settled with Letha Owen and she was dismissed as a party plaintiff and the suit progressed to a judgment in favor of Rufus D. Owen for $900.    The defense to the action was set up in a special plea to the effect that Hagler, in his application for membership, made untrue and fraudulent statements and did conceal material facts, and particularly that he declared that he did not have any disease of the lungs and did not have disease of the heart, when in fact he did have both of these diseases.

Messrs. W. C. CALKINS and W. S. FORMAN for plaintiff in error.

Mr. W. A. SCHWARTZ, for defendant in error.

REEVES, J. The material question submitted to the jury upon the trial was whether Hagler had, in his application for membership, made untrue statements as to his condition of health. The testimony on this point was conflicting. The testimony offered by the plaintiff established the contention that the statements made by Hagler in his application, as to the condition of his health, were true. On the other hand, the testimony offered by the defendant tended strongly to show that, prior to May, 1884, when the certificate was issued to Hagler, he was afflicted with flux occasionally and suffered from some form of lung disease. The statements made by Hagler in his application for a pension in 1882 and 1883, were particularly relied on by the defendant to show that prior to 1884 he was claiming that he was suffering from lung disease and flux, contracted while he was in the military service, and that a pension certificate was granted him for disease of the lungs. The jury found, in answer to special interrogatories submitted to them, that at the time he made his application for membership in the appellant association he was not suffering from lung trouble or flux and that his death was caused by syphilis. It may fairly be said from all this evidence, that Hagler was not entitled to a pension. We think that the clear weight of the testimony is that Hagler was not suffering from lung disease in May, 1884. We incline to give more force to the uncontradicted testimony as to the work Hagler did from 1870 to 1886, than to the opinion of the physicians as to his physical condition. It is shown that for several years prior to 1881, Hagler was engaged for Roseboro in the woods, receiving and loading ties; was out every day, wet and dry, and was always ready for duty. From 1884 to 1886, he was a helper in a blacksmith shop, using a sledge weighing fourteen pounds, and put in good time. It would hardly have been possible for a man with diseased lungs to have performed this labor. This is not the only evidence on the part of the plaintiff as to Hagler's condition of health. Besides the general testimony of his neighbors, who knew

him at this time and testify to his general appearance of good
health, there is the testimony of Dr. Edwards, who made the
examination of Hagler when he applied for membership in
1884, to the effect that he examined his lungs and did not find
them diseased; found his respiration full, clear and distinct;
examined his throat carefully and found no evidence of bron-
chitis, and, so far as he could tell from his examination, he
was sound in health.   Dr. McNally, who examined Hagler
for another policy of life insurance in June, 1884, testified
that after a careful examination he found his lungs healthy;
no indication of bronchitis or other disease.

This much of the testimony is referred to simply to show
that there was sufficient evidence to support the verdict of
the jury; and because the testimony seems to us to establish
the fact that Hagler was not suffering with lung trouble in
1884, we reach the conclusion that his condition could not, in
reason, have been such a year before as to entitle him to a
pension on account of lung trouble.   If a fraud was com-
mitted in the procuring of the pension and there was no
fraud on appellant when Hagler was admitted to mem-
bership in appellant association, we fail to see any legal
grounds upon which appellant can escape liability on ac-
count of the pension fraud.   The only material inquiry is,
was Hagler in the physical condition he represented him-
self to be when he made application for membership in
appellant association.   Of course, the affidavit made by Hagler
for a pension was proper evidence in this case, but not con-
clusive.   His application for a pension and his application for
membership in the life association were in conflict, and it
became necessary for the jury to determine from all the evi-
dence which was true.   They found that the statements made
in the application for membership in the life association were
true, and we are not disposed to disturb their finding.

Objection is taken to the form in which the jury returned
their verdict.   They found for the plaintiff, and assessed his
damages at $1,000, less ten per cent, and the court properly
directed the clerk to enter the verdict for $900.   The objec-
tions to the plaintiff's instructions are not well taken.   The

fifth instruction told the jury, that if they found from the evidence that Haglar made truthful answers to the questions propounded· to him in the application, to the best of his knowledge and belief, that was all he was required to do. We fail to see any error in this. If Haglar was guilty of some immoral practice which resulted in the disease which caused his death, the certificate or contract did not provide in such case the policy should be void. The only provision on this subject found in the contract is to the effect that if the member should injure or impair his health by immoral practices, the association might, by written notice to the member, cancel and annul. the certificate. This disposes of the criticism upon the seventh and eighth instructions given for the plaintiff.

Finding no error in the record that should reverse the judgment, the same is affirmed.

*Judgment affirmed.*